IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-909

Filed 18 June 2025

Cabarrus County, Nos. 22 CRS 051728, 22 CRS 376117, 22 CRS 376118

STATE OF NORTH CAROLINA

v.

DAMIAN DANELLE CLARK, Defendant.

Appeal by Defendant from judgments entered 1 & 2 May 2024 by Judge William A. Wood II in Cabarrus County Superior Court. Heard in the Court of Appeals 21 May 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Christine Wright, for the State.*

*Everson Law Office, PLLC, by Cynthia Everson, for Defendant.*

GRIFFIN, Judge.

Defendant Damian D. Clark appeals from judgments entered after the trial court denied his Motion to Suppress. Defendant pled guilty to trafficking opium or heroin, possession of a firearm by a felon, and possession of a stolen firearm. Defendant contends (1) the trial court's findings are not supported by competent evidence; and (2) the trial court's conclusions of law are not supported by its findings. We affirm the trial court's order denying Defendant's Motion to Suppress.

## I. Factual and Procedural Background

On 4 May 2022, Detective A.L. Favia applied for a search warrant for property

located at 1451 Tygress Drive, Kannapolis, NC 28081. In support of the warrant, Detective Favia indicated she received an anonymous tip from a credible and reliable informant, who "provided information . . . on a number of occasions prior to the application for [the] search warrant." Detective Favia specified "on multiple occasions within the past week/two weeks" the informant had "purchased schedule II-controlled substances from the residence 1451 Tygress Drive, Kannapolis, NC 28081 utilizing Cabarrus County Sheriffs' [O]ffice special funds." All the sales were "arranged and carried out by [Defendant]." The schedule II-controlled substances "[were] turned over to detectives and placed into evidence immediately after the purchase." After reviewing the information presented to him, Magistrate Bill Baggs II found probable cause and issued the search warrant.

Upon executing the search warrant, officers seized 119.7 grams of suspected heroin, 81.3 grams of marijuana, two handguns, scales, and assorted ammunition.

On 6 June 2022, Defendant was indicted by a Cabarrus County Grand Jury for felony trafficking in opium or heroin by possessing 28 grams or more of heroin. On 13 February 2023, the Grand Jury returned a superseding indictment alleging the substance to be fentanyl instead of heroin.

On 26 April 2024, Defendant filed a Motion to Suppress alleging the search warrant lacked probable cause. On 30 April 2024, a suppression hearing was held and the trial court denied Defendant's Motion. On 1 May 2024, Defendant pled guilty pursuant to a plea agreement to trafficking opium or heroin, possession of a firearm

by a felon, and possession of a stolen firearm. Defendant reserved the right to appeal the denial of his Motion to Suppress. The order denying Defendant's Motion was entered 2 May 2024. Defendant timely appeals.

## II. Analysis

Defendant alleges the trial court erred by denying his Motion to Suppress. Specifically, Defendant contends (1) the trial court's findings are not supported by competent evidence; and (2) the trial court's conclusions of law are not supported by its findings.

"Our review of a trial court's denial of a motion to suppress is 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.'" *State v. Eddings*, 280 N.C. App. 204, 209, 866 S.E.2d 499, 503 (2021) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). We review a trial court's conclusions of law de novo. *State v. Jones*, 267 N.C. App. 615, 620, 834 S.E.2d 160, 164 (2019).

"An appellate court accords great deference to the trial court's ruling on a motion to suppress because the trial court is entrusted with the duty to hear testimony (thereby observing the demeanor of the witnesses) and to weigh and resolve any conflicts in the evidence." *State v. Brown*, 248 N.C. App. 72, 74, 787 S.E.2d 81, 84 (2016) (citation and internal marks omitted).

## A. Findings

Defendant challenges Finding of Fact 13 as unsupported by competent evidence. He argues Finding of Fact 13 is a recitation of Detective Favia's search warrant application unsupported by probable cause.

Finding of Fact 13 states the following:

> Probable cause for the issuance of the search warrant included the following: A) over the several months preceding the issuance of the search warrant, detectives with the Cabarrus County Sheriff's Office received reliable information from trusted sources indicating that [Defendant] was involved with the purchase and sale of [s]chedule II[-]controlled substances, B) within the couple of weeks preceding the issuance of the search warrant, Detective Favia met with an individual referred to in the search warrant as [Informant], C) [Informant] is not identified by name in the search warrant due to fear of personal retaliation should his/her identity be known, D) [Informant] has been proven credible and reliable due to having provided information to Detective Favia on a number of occasions prior to the application for this search warrant which she had personally verified to be true and correct, E) throughout this investigation, including multiple times in the week/two weeks preceding the application for this search warrant, [Informant] has purchased [s]chedule II[-]controlled substances from the residence located at 1451 Tygress Dr., Kannapolis, NC, F) Cabarrus County Sheriff's Office funds were utilized for these purchases, G) each of the sales was arranged and carried out by [Defendant], H) the purchased [s]chedule II[-] controlled substances were turned over to detectives and placed into evidence immediately after the purchase, I) based on Detective Favia's training and experience, she knows that individuals involved with the illegal sale of narcotics commonly possess firearms in order to protect themselves or their controlled substances, J) Detective Favia's application for the search warrant requested court

> authorization based on probable cause for the search of any and all evidence that is related to the crime of possession with the intent to sale/deliver a schedule II[-]controlled substance at 1451 Tygress Dr., Kannapolis, NC.

A trial court's findings must be supported by competent evidence. *Eddings*, 280 N.C. App. at 209, 866 S.E.2d at 503. "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *State v. Maye*, 295 N.C. App. 248, 252, 905 S.E.2d 293, 296 (2024) (citation and internal marks omitted).

"Under North Carolina law, an application for a search warrant must be supported by an affidavit detailing 'the facts and circumstances establishing probable cause to believe that the items are in the places . . . to be searched.'" *State v. McKinney*, 368 N.C. 161, 164, 775 S.E.2d 821, 824 (2015) (quoting N.C. Gen. Stat. § 15A-244(3) (2023)). Under the probable cause standard, "[a] magistrate must make a practical, common-sense decision, based on the totality of the circumstances, whether there is a fair probability that contraband will be found in the place to be searched." *Id.* (citation and internal marks omitted). The magistrate is permitted to draw "reasonable inferences from the evidence in the affidavit supporting the application for the warrant[.]" *Id.* at 164, 775 S.E.2d at 824–25 (citation and internal marks omitted). "[The] evidence is viewed from the perspective of a police officer with the affiant's training and experience, and the commonsense judgments reached by

officers in light of that training and specialized experience[.]" *Id.* 164–65, 775 S.E.2d at 825 (citations and internal marks omitted).

Probable cause does not require certainty, but only "a probability or substantial chance of criminal activity." *Id.* at 165, 775 S.E.2d at 825 (citation and internal marks omitted). We give great deference to a magistrate's determination of probable cause, and we are only "responsible for ensuring that the issuing magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (alterations in *Gates*)).

Here, Defendant contends the warrant lacked probable cause because Detective Favia's assertions in his warrant application were "conclusory" and "stale."

### 1. *"Conclusory"*

Defendant alleges Detective Favia's assertions regarding the credibility and reliability of the informant were "conclusory" because Detective Favia merely stated the informant was credible and reliable without any additional information. We disagree.

We recognize "[p]robable cause cannot be shown by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based." *State v. Campbell*, 282 N.C. 125, 130–31, 191 S.E.2d 752, 756 (1972) (citation and internal marks omitted). "The magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics

were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant . . . was credible or his information reliable." *State v. Edwards*, 286 N.C. 162, 165, 209 S.E.2d 758, 760 (1974) (citation and internal marks omitted).

Here, there were sufficient "underlying circumstances" presented in the application to support the credibility and reliability of the informant. The record shows the informant had previously provided information to Detective Favia "on a number of occasions" prior to the application for the search warrant at issue, and Detective Favia "personally verified" that information "to be true and correct." "[T]hroughout [the] investigation" and "multiple times" in the week/two weeks preceding the application, the informant purchased schedule II-controlled substances from the residence sought to be searched. The informant was given funds by the Cabarrus County Sheriff's Office, and sales were "arranged and carried out" by Defendant. The controlled substances "were turned over to detectives and placed into evidence immediately after the purchase."

Contrary to Defendant's contention, Detective Favia did not merely state the informant was credible and reliable. Instead, Detective Favia provided a detailed explanation showing how the informant was reliable through collecting evidence at the residence in question. Detective Favia involved the informant in the investigation and obtained corroborating evidence through a series of staged drug deals to support the informant's original tip. *See State v. Bone*, 354 N.C. 1, 10, 550 S.E.2d 482, 488

(2001) ("[A]n officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." (citation and internal marks omitted)). Thus, we hold there was sufficient information in the warrant application to support the credibility and reliability of the informant, and the information presented was not conclusory.

### 2. *"Stale"*

Next, Defendant contends the information in the warrant application was "stale" because "it is unclear how much time lapsed between the information provided by the informant and the application for the search warrant." We disagree.

"The test for staleness of information on which a search warrant is based is whether the facts indicate that probable cause exists at the time the warrant is issued." *Brown*, 248 N.C. App. at 76, 787 S.E.2d at 85 (citation and internal marks omitted). This Court has held that there is no hard and fast rule for how much time is allowed to pass between the alleged criminal activity and the affidavit seeking the warrant. *Id.* (citation omitted). "The general rule is that no more than a reasonable time may have elapsed." *Id.* (citation omitted). "The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock." *Id.* (citation omitted).

Even though we measure staleness based on what is "reasonable," we have held "an interval of two or more months between the alleged criminal activity and the

affidavit" is an "unreasonably long delay." *State v. Lindsey*, 58 N.C. App. 564, 565–66, 293 S.E.2d 833, 834 (1982) (citation and internal marks omitted). However, criminal activity observed "within a day or two of the affidavit and warrant application" is generally not stale. *Brown*, 248 N.C. App. at 76, 787 S.E.2d at 85 (citing *State v. Walker*, 70 N.C. App. 403, 405, 320 S.E.2d 31, 33 (1984) (upholding a search warrant where an informant had seen marijuana within 48 hours of the warrant application)).

Additionally, the affidavit must specify when the informant observed the activity, so the magistrate can properly evaluate whether probable cause exists at the time of issuing the warrant. *See id.* at 80, 787 S.E.2d at 87 (reversing a trial court's suppression order where the officer stated when he spoke to the informant but "failed to state the time the informant's observations were made." (citation and internal marks omitted)).

Here, Detective Favia stated in her affidavit:

> Throughout this investigation, including on multiple occasions within the past week/two weeks, [Informant] has purchased schedule II-controlled substances from the residence 1451 Tygress Dr., Kannapolis, NC 28081 utilizing Cabarrus County Sheriffs' [O]ffice special funds. All sales were arranged and carried out by [Defendant]. The purchased schedule II[-]controlled substance was turned over to detectives and placed into evidence immediately after the purchase.

Here, it is apparent from Detective Favia's affidavit the informant obtained the controlled substances from Defendant at his residence within a week or two weeks

of the warrant application. Thus, the affidavit does specify "the time the informant's observations were made." *Id.*

The only question left for us to decide is whether one or two weeks is an "unreasonable delay."

In *State v. McCoy*, this Court had to determine whether circumstances of two prior drug deals in different motel rooms within a ten-day period would "reasonably lead[] to the inference that cocaine could be found in the third room." *State v. McCoy*, 100 N.C. App. 574, 577, 397 S.E.2d 355, 357 (1990). We looked at two factors to make this determination: "(1) the amount of criminal activity and (2) the time period over which the activity occurred." *Id.* at 577, 397 S.E.2d at 358. There, we stated the following regarding time:

> Absent additional facts tending to show otherwise, a one-shot type of crime, such as a single instance of possession or sale of some contraband, will support a finding of probable cause only for a few days at best. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.

*Id.* (citations and internal marks omitted).

As a result of the "continuous nature" of the activity, we held ten days to be sufficient because there was a "reasonabl[e] probab[ility], judging from the totality of the circumstances, that the contraband sought could be found in the location to be searched." *Id.* at 578, 397 S.E.2d at 358. This Court reasoned that the defendant, who had been previously convicted of selling drugs, "had within a ten-day period

rented three different motel rooms, each time for several days, in a city in which he had a local address, and that at two of those locations he had sold cocaine." *Id.* Thus, it was "reasonable to infer that when the suspect occupied the third room, he still possessed the cocaine." *Id.*

Here, similar to the facts in *McCoy*, there was a continuous pattern of drug deals between Defendant and the informant. Detective Favia stated in the warrant application that "throughout [the] investigation" and on "multiple occasions" in the week/two weeks preceding the application, the informant purchased schedule II-controlled substances from Defendant at his residence. Notably, the facts of the present case are even more compelling than in *McCoy*, because unlike *McCoy*, Defendant was not relocating to different locations or taking up residence in multiple motel rooms during the investigation. The evidence shows all the arranged drug deals occurred at 1451 Tygress Dr., Kannapolis, NC 28081, Defendant's residence.

Thus, considering the circumstances of the present case, and the continuous nature of the drug activity, we hold one or two weeks does not amount to an "unreasonable delay" because there is a "fair probability" the substances would still be at Defendant's residence. *See McKinney*, 368 N.C. at 164, 775 S.E.2d at 824. Accordingly, the information presented in the warrant application was not stale.

## B. Conclusions of Law

Defendant contends the trial court's conclusions of law are unsupported by its findings of fact because, in his view, Finding of Fact 13 is unsupported by competent

evidence.

As discussed above, Finding of Fact 13 is supported by competent evidence and is therefore binding on appeal. *See Eddings*, 280 N.C. App. at 209, 866 S.E.2d at 503.

"[A] trial court may not consider facts beyond the four corners of a search warrant in determining whether a search warrant was supported by probable cause at a suppression hearing." *Id.* at 211, 866 S.E.2d at 505 (citation and internal marks omitted). Here, the trial court did this and explained how the information presented in the affidavit was sufficient to establish probable cause in Finding of Fact 13.

As a result, the trial court denied Defendant's Motion to Suppress concluding the affidavit was not "conclusory" or "stale" and that "the evidence as a whole provides a substantial basis for concluding that probable cause exists to support the issuance of the search warrant[.]"

Because we held competent evidence supports the trial court's finding of probable cause based on the affidavit submitted, this in turn supports the trial court's conclusion that the information presented was not "conclusory" or "stale" and that probable cause existed to support the issuance of the warrant. *See State v. McHone*, 158 N.C. App. 117, 122, 580 S.E.2d 80, 84 (2003) (holding competent evidence sufficient to support the trial court's findings "which, in turn, support its conclusion that the affidavit did not contain sufficient information to establish probable cause"). As a result, we hold the trial court did not err in denying Defendant's Motion to Suppress.

### III.     Conclusion

For the aforementioned reasons, we hold the trial court properly denied Defendant's Motion to Suppress.

AFFIRMED.

Judges TYSON and COLLINS concur.